UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

SHARON MILSTEAD,

    Plaintiff,

v.                                                              Case No. 2:20-cv-92-KS-MTP

TD BANK USA, N.A.,
LVNV FUNDING LLC,
CREDIT ONE BANK, N.A.,
EQUIFAX INFORMATION
SERVICES LLC,

    Defendants.

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

    Plaintiff Sharon Milstead brings this action against Defendants TD Bank USA, N.A., LVNV Funding LLC, Credit One Bank, N.A. and Equifax Information Services LLC and alleges:

**Introduction**

    1.    This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (FCRA).

    2.    In October of 2018, an account unknown and unauthorized by Plaintiff was opened with Credit One. In December 2018, another account unknown and unauthorized by Plaintiff was opened through TD Bank. Both accounts began reporting on Plaintiff's credit reports. Plaintiff disputed the accounts with the credit reporting agencies and through them, the entities furnishing the inaccurate information. Defendants failed to conduct a reasonable investigation and concluded that Plaintiff was responsible for the accounts.

1

**Jurisdiction, Venue and Parties**

3. This Court has original jurisdiction over Plaintiff's claims arising under the FCRA pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

4. Personal jurisdiction exists over Defendants as they have the necessary minimum contacts with the State of Mississippi.

5. Venue is appropriate in the United States District Court for the Southern District of Mississippi, Hattiesburg Division, pursuant to 28 U.S.C. § 1391, as the events giving rise to Plaintiff's claims occurred in Forrest County, Mississippi.

6. Plaintiff is, and was at all relevant times a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. Defendant TD Bank USA, N.A. ("TD Bank") is a national association with its principal office located at 2035 Limestone Road, Wilmington, Delaware 19808.

8. Defendant LVNV Funding LLC ("LVNV") was formed in Delaware and conducts business through its principal place of business located at 6801 South Cimarron Road, Suite 424J, Las Vegas, NV 89113.

9. Defendant Credit One Bank, N.A. ("Credit One") is a national association with its principal office located at 6801 South Cimarron Road, Las Vegas, Nevada 89113.

10. Defendant Equifax Information Services LLC ("Equifax") is a consumer reporting agency formed in Georgia and conducts business through its registered agent Corporation Service Company at its address of 7716 Old Canton Road, Suite C, Madison, MS 39110.

11. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## General Allegations

12. In October 2019, someone other than Plaintiff opened a Credit One credit card account in Plaintiff's name.

13. Plaintiff did not authorize the application for, or opening of a Credit One credit card account in her name.

14. The opening of the Credit One credit card in Plaintiff's name was the result of identification (ID) theft.

15. In December 2018, someone other than Plaintiff opened a TD Bank credit card in Plaintiff's name.

16. Plaintiff did not authorize the application for, or opening of a TD Bank credit card account in her name.

17. The opening of the TD Bank credit card account in Plaintiff's name was the result of ID theft.

18. In August 2019, the fraudulent Credit One credit card account had an outstanding balance of approximately $932.

19. In August 2019, Credit One sold the Credit One account to LVNV.

20. LVNV began attempting to collect the outstanding debt on the fraudulent Credit One credit card account and began reporting the fraudulent account to Equifax.

21. In September 2019, Plaintiff received several bills associated with the Credit One, TD Bank, and LVNV accounts.

22. When she received the bills, Plaintiff contacted TD Bank and Credit One to dispute the fraudulent accounts. Plaintiff was told to file a police report to support her assertion that the accounts were fraudulent.

23. On October 4, 2019, Plaintiff filed a police report with the Forrest County Sheriff's Office, explaining that the credit card accounts were fraudulent.

24. In November 2019, Plaintiff accessed her Equifax credit file and realized the fraudulent accounts were reporting on her Equifax credit report.

25. On January 9, 2020, Plaintiff mailed a detailed dispute letter to Equifax. The letter explained that Plaintiff disputed the TD Bank, Credit One and LVNV accounts because they were fraudulent. Equifax received the dispute letter in Atlanta, Georgia on January 31, 2020.

26. In her letter to Equifax, Plaintiff included her name, address, social security number, date of birth, driver license number, as well as the phone number, police report number, and name of the officer who took her police report.

27. In her dispute letter, Plaintiff explained her attempts to resolve the issue directly with TD Bank, Credit One, and LVNV. Plaintiff included that those furnishing entities failed to resolve the matter.

28. Upon information and belief, Equifax sent notice of Plaintiff's dispute to TD Bank, Credit One and LVNV.

29. On or around February 21, 2020, Equifax provided Plaintiff with the results of its investigation into her disputes. Equifax verified that the Credit One, TD Bank, and LVNV accounts belonged to Plaintiff.

30. Equifax continues to report derogatory collection and charged-off accounts on Plaintiff's credit report despite Plaintiff providing all the necessary information for Defendants to have investigated and determined the accounts are not Plaintiff's.

31. As a result of Defendants' conduct, Plaintiff has suffered actual damages in the form of adverse interest rates, lost loan and credit opportunities, credit defamation, time and expense dealt with repeatedly disputing the accounts and communicating with Defendants, as well as emotional distress.

32. All necessary conditions precedent to the filing of this action have occurred.

## COUNT I
### (Violations of FCRA § 1681s-2(b) by TD Bank USA, N.A.)

33. Plaintiff re-alleges and incorporates paragraphs 1 through 32, including all subparts, as if fully set forth herein.

34. TD Bank is an entity who, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher of information" as codified at 15 U.S.C. § 1681s-2.

35. TD Bank published false information regarding Plaintiff's alleged debt obligation and the credit card account to Equifax, and through Equifax to all of Plaintiff's potential lenders.

36. On one or more occasions within the past two years, by example only and without limitation, TD Bank violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies along with Plaintiff's disputes.

37. When Plaintiff mailed her detailed, written disputes and enclosures to Equifax and the other consumer reporting agencies, those consumer reporting agencies (CRAs) used a dispute system named "e-OSCAR" which has been adopted by the CRAs and by their furnisher-customers such as TD Bank. It is an automated system and the procedures used by the CRAs are systemic and uniform.

5

38. When a CRA like Equifax receives a consumer dispute, it (usually via an offshore, outsourced vendor) translates that dispute into an Automated Credit Dispute Verification or "ACDV" form.

39. The ACDV form is the method by which TD Bank has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

40. Based on the manner in which Equifax responded to each of Plaintiff's disputes, representing that TD Bank had verified the supposed accuracy of its reporting, Plaintiff alleges that Equifax did in fact forward Plaintiff's disputes via ACDVs to TD Bank.

41. TD Bank understood the nature of Plaintiff's disputes when it received the ACDVs from Equifax.

42. TD Bank violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's dispute of TD Bank's representations; by failing to review all relevant information regarding same; by failing to correctly report the results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of TD Bank's representations to the consumer reporting agencies.

43. TD Bank violated 15 U.S.C. § 1681s-2(b) by continuing to furnish inaccurate information to Equifax after TD Bank had been notified of the dispute and that the information was inaccurate.

44. Plaintiff spoke to TD Bank over the phone and through written correspondence. Plaintiff repeatedly explained that she did not open, or authorize anybody else to open the TD Bank account. Plaintiff filed a report of identity theft with the Forrest County Sheriff's Office. The Forrest County Sheriff's Office concluded that Plaintiff was the victim of identity theft.

45. Despite the provided police report stating that Plaintiff was the victim of identity theft, TD Bank falsely maintained that Plaintiff applied for the card and made the charges and continued to report the account as belonging to Plaintiff.

46. TD Bank did not have any reasonable basis to believe that Plaintiff was responsible for the account reported in the TD Bank representations. It also had substantial evidence by which to have verified that Plaintiff was not the responsible party. TD Bank knowingly chose to follow procedures which did not review, confirm or verify who the responsible party was for the account and debt in question. Further, TD Bank had all of the evidence and information with which to recognize and confirm Plaintiff was not the liable party. Plaintiff had communicated with TD Bank many times prior to sending the dispute letters to Equifax, informing TD Bank of the fraudulent account.

47. As a result of TD Bank's conduct, action and inaction, Plaintiff suffered actual damages in the form of adverse interest rates, lost loan and credit opportunities, credit defamation, time and expense dealt with repeatedly disputing the accounts and communicating with Defendant, as well as emotional distress.

48. TD Bank's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages pursuant to 15 U.S.C. § 1681n. In the alternative, TD Bank was negligent entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against TD Bank USA, N.A., for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

## COUNT II
### (Violations of FCRA § 1681s-2(b) by LVNV Funding LLC)

49. Plaintiff re-alleges and incorporates paragraphs 1 through 32, including all subparts, as if fully set forth herein.

50. LVNV is an entity who, regularly and in the course of business as a collection agency, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher of information" as codified at 15 U.S.C. § 1681s-2.

51. LVNV published false information regarding Plaintiff's alleged debt obligation and the collections account to Equifax, and through Equifax to all of Plaintiff's potential lenders.

52. On one or more occasions within the past two years, by example only and without limitation, LVNV violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies along with Plaintiff's disputes.

53. When Plaintiff mailed her detailed, written disputes and enclosures to Equifax and the other consumer reporting agencies, those consumer reporting agencies (CRAs) used a dispute system named "e-OSCAR" which has been adopted by the CRAs and by their furnisher-customers such as LVNV. It is an automated system and the procedures used by the CRAs are systemic and uniform.

54. When a CRA like Equifax receives a consumer dispute, it (usually via an offshore, outsourced vendor) translates that dispute into an Automated Credit Dispute Verification or "ACDV" form.

55. The ACDV form is the method by which LVNV has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

56. Based on the manner in which Equifax responded to each of Plaintiff's disputes, representing that LVNV had verified the supposed accuracy of its reporting, Plaintiff alleges that Equifax did in fact forward Plaintiff's disputes via ACDVs to LVNV.

57. LVNV understood the nature of Plaintiff's disputes when it received the ACDVs from Equifax.

58. LVNV violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's dispute of LVNV's representations; by failing to review all relevant information regarding same; by failing to correctly report the results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of LVNV's representations to the consumer reporting agencies.

59. LVNV violated 15 U.S.C. § 1681s-2(b) by continuing to furnish inaccurate information to Equifax after LVNV had been notified of the dispute and that the information was inaccurate.

60. Plaintiff communicated to LVNV through written correspondence. Plaintiff repeatedly explained that she did not open, or authorize anybody else to open the account LVNV was attempting to collect on. Plaintiff filed a report of identity theft with the Forrest County Sheriff's Office. The Forrest County Sheriff's Office concluded that Plaintiff was the victim of identity theft.

61. Despite the provided police report stating that Plaintiff was the victim of identity theft, LVNV falsely maintained that Plaintiff applied for the card and made the charges and continued to report the account as belonging to Plaintiff.

62. LVNV did not have any reasonable basis to believe that Plaintiff was responsible for the account reported in the LVNV representations. It also had substantial evidence by which to have verified that Plaintiff was not the responsible party. LVNV knowingly chose to follow procedures which did not review, confirm, or verify who the responsible party was for the account and debt in question. Further, LVNV had all of the evidence and information with which to recognize and confirm Plaintiff was not the liable party. Plaintiff had communicated with LVNV many times prior to sending the dispute letters to Equifax, informing LVNV of the fraudulent account.

63. As a result of LVNV's conduct, action and inaction, Plaintiff suffered actual damages in the form of adverse interest rates, lost loan and credit opportunities, credit defamation, time and expense dealt with repeatedly disputing the accounts and communicating with Defendant, as well as emotional distress.

64. LVNV's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages pursuant to 15 U.S.C. § 1681n. In the alternative, LVNV was negligent entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against LVNV Funding LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

## COUNT III
### (Violations of FCRA § 1681s-2(b) by Credit One Bank, N.A.)

65. Plaintiff re-alleges and incorporates paragraphs 1 through 32, including all subparts, as if fully set forth herein.

66. Credit One is an entity who, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher of information" as codified at 15 U.S.C. § 1681s-2.

67. Credit One published false information regarding Plaintiff's alleged debt obligation and the credit card account to Equifax, and through Equifax to all of Plaintiff's potential lenders.

68. Moreover Credit One sold the fraudulent debt to a debt collector despite the account not belonging to Plaintiff and instigating LVNV's collection activities towards Plaintiff.

69. On one or more occasions within the past two years, by example only and without limitation, Credit One violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies along with Plaintiff's disputes.

70. When Plaintiff mailed her detailed, written disputes and enclosures to Equifax and the other consumer reporting agencies, those consumer reporting agencies (CRAs) used a dispute system named "e-OSCAR" which has been adopted by the CRAs and by their furnisher-customers such as Credit One. It is an automated system and the procedures used by the CRAs are systemic and uniform.

71. When a CRA like Equifax receives a consumer dispute, it (usually via an offshore, outsourced vendor) translates that dispute into an Automated Credit Dispute Verification or "ACDV" form.

72. The ACDV form is the method by which Credit One has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

73. Based on the manner in which Equifax responded to each of Plaintiff's dispute, representing that Credit One had verified the supposed accuracy of its reporting, Plaintiff alleges that Equifax did in fact forward Plaintiff's disputes via ACDVs to Credit One.

74. Credit One understood the nature of Plaintiff's disputes when it received the ACDVs from Equifax.

75. Credit One violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's dispute of Credit One's representations; by failing to review all relevant information regarding same; by failing to correctly report the results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of Credit One's representations to the consumer reporting agencies.

76. Credit One violated 15 U.S.C. § 1681s-2(b) by continuing to furnish inaccurate information to Equifax after Credit One had been notified of the dispute and that the information was inaccurate.

77. Plaintiff spoke to Credit One over the phone and through written correspondence. Plaintiff repeatedly explained that she did not open, or authorize anybody else to open the Credit One account. Plaintiff filed a report of identity theft with the Forrest County Sheriff's Office. The Forrest County Sheriff's Office concluded that Plaintiff was the victim of identity theft.

78. Despite the provided police report that Plaintiff was the victim of identity theft, Credit One falsely maintained that Plaintiff applied for the card and made the charges and continued to report the account as belonging to Plaintiff and proceeded to sell the fraudulent debt to LVNV to begin their collection procedures.

79. Credit One did not have any reasonable basis to believe that Plaintiff was responsible for the account reported in the Credit One representations. It also had substantial evidence by which to have verified that Plaintiff was not the responsible party. Credit One knowingly chose to follow procedures which did not review, confirm or verify who the responsible party was for the account and debt in question. Further, Credit One had all of the evidence and information with which to recognize and confirm Plaintiff was not the liable party. Plaintiff had communicated with Credit One many times prior to sending the dispute letters to Equifax, informing Credit One of the fraudulent account.

80. As a result of Credit One's conduct, action and inaction, Plaintiff suffered actual damages in the form of adverse interest rates, lost loan and credit opportunities, credit defamation, time and expense dealt with repeatedly disputing the accounts and communicating with Defendant, as well as emotional distress.

81. Credit One's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages pursuant to 15 U.S.C. § 1681n. In the alternative, Credit One was negligent entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Credit One Bank, N.A., for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

## COUNT IV
### (Violations of the FCRA § 1681i(a) by Equifax)

82. Plaintiff re-alleges and incorporates paragraphs 1 through 32, including all subparts, as if fully set forth herein.

13

83. Equifax violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies, by failing to conduct a lawful reinvestigation, and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

84. Plaintiff told Equifax that she had already tried to fix the fraudulent account with the furnishing entities by completing the requested police report with the Forrest County Sheriff's Office, but that the furnishers still refused to remove the fraudulent account. Equifax took no independent action to investigate the dispute or to determine whether Plaintiff was the victim of identity theft.

85. Equifax failed to investigate Plaintiff's dispute despite Plaintiff providing all the necessary information. Equifax chose to ignore all the information provided in the dispute and rely solely on the information provided by TD Bank, LVNV, and Credit One. Plaintiff even provided her contact information, but Equifax made no attempt to contact her to obtain any additional information if any was needed.

86. Equifax chose to ignore this information and simply parroted the information provided by the furnisher.

87. As a result of Equifax's conduct, action and inaction, Plaintiff suffered actual damages in the form of adverse interest rates, lost loan and credit opportunities, credit defamation, time and expense dealt with repeatedly disputing the accounts and communicating with Defendant, as well as emotional distress.

88. Equifax's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent, entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant Equifax Information Services LLC for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, for pre-judgment and post-judgment interest at the legal rate, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

## COUNT V
### (Violations of the FCRA § 1681e(b) by Equifax)

89. Plaintiff re-alleges and incorporates paragraphs 1 through 32, including all subparts, as if fully set forth herein.

90. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

91. Plaintiff did not apply for any of the accounts with TD Bank or Credit One and allowed for fraudulent accounts to remain. LVNV was able to purchase and begin attempts to collect on the fraudulent debt from Plaintiff based on the fraudulent account originally held and reported by Credit One. Plaintiff did not apply for any account with TD Bank and Credit One, nor did she authorize anyone else to apply for the accounts. Despite this, Equifax's procedures allowed for the account to be reported on Plaintiff's Equifax credit report.

92. As a result of Equifax's conduct, action and inaction, Plaintiff suffered actual damages in the form of adverse interest rates, lost loan and credit opportunities, credit defamation, time and expense dealt with repeatedly disputing the accounts and communicating with Defendant, as well as emotional distress.

93. Equifax's conduct, action, and inaction was willful, rendering it liable for punitive damages pursuant to 15 U.S.C. § 1681n. In the alternative, if Equifax was negligent, Plaintiff is entitled to recover under 15 U.S.C. § 1681o.

94. Plaintiff is entitled to recover costs and attorney's fees from Equifax pursuant to 15 U.S.C. § 1681n and § 1681o.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant Equifax Information Services LLC for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, for pre-judgment and post-judgment interest at the legal rate, enjoinder from further violations of these parts, and any other such relief the Court may deem just and proper.

Respectfully submitted,

*s/ William Graves*
William Graves
Mississippi Bar #: 105679
Morgan & Morgan, PLLC
4450 Old Canton Road, Suite 200
Jackson, MS 39211
Phone: (601) 503-1654
Fax: (601) 503-1606
WGraves@forthepeople.com
Counsel for Plaintiff